



NORTHERN DISTRICT OF TEXAS

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 23, 2007**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Rosael Rodriguez** | § | **Case No.: 06-33637-** |
| | § | |
| **Debtor** | § | **Chapter 11** |
| | § | |
| | § | |

## AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE AMENDED CHAPTER 11 PLAN OF REORGANIZATION FOR ROSAEL RODRIGUEZ

---

CAME ON FOR CONSIDERATION the confirmation of the Amended Chapter 11 Plan of Reorganization (the Plan) for Rosael Rodriguez filed by the debtor-in-possession in the above-captioned case and this Court, after notice and a hearing, and subject to the Order Granting Application for Conditional Approval of the Disclosure Statement under Small Business Procedures, entered on September 4, 2007 ("Disclosure Statement Order"), which Order also established and approved, among other things, procedures for the solicitation and tabulation of votes on the Plan, and the Notice of Solicitation and of the Confirmation Hearing which set forth the deadlines for the casting of ballots and the filing of objections to confirmation of the Plan. The Court held a

hearing regarding confirmation of the Plan on October 23, 2007 at 9 a.m. (the "Confirmation Hearing") and this Court considered the evidence adduced and proffered and the arguments made at the Confirmation Hearing, along with the notices and other documents filed in connection with confirmation of the Plan and the record in the above-captioned case.The Debtor made several announcements to update events since the filing of the Plan and also requested that the following provisions be added to and incorporated into the terms of the Plan of Reorganization upon the agreement of the Debtor and the affected creditors, which additional provisions have been considered  by the Court.

### Announcments

a.      As indicated in the Plan, Dallas County has filed an amended Administrative claim for the actual assessed 2007 property taxes, reducing that tax claim from $28,367.68 estimate to $26,862.33, which shall  be paid on or before January 31, 2008.

b.      With the recognition by ABLI that there was no postpetition arrearage on its Class Four and Class Five claims, ABLI's Class Five Claim is now unimpaired.

### Additional Provisions to be incorporated into Plan

Class 4 (American Business Lending , Inc., successor to Gateway National Bank ) (ABLI):

The following language shall be added to and incorporated into the treatment of the Class 4 claim of ABLI:   "This claim is also secured by a  second lien on the Beatty Street real and personal property."  Also, ABLI has filed a revised proof of claim deleting

the previously claimed arrearage claim of $192.38, which ABLI  now notes was previously paid, as asserted by the Debtor.

Class  5  (American  Business  Lending  ,  Inc.,  successor  to  Gateway  National  Bank) (ABLI):        ABLI has filed a revised proof of claim deleting the previously claimed arrearage claim of $12,549.93, which ABLI now notes was previously paid, as asserted by the Debtor.

 Class 7 (Dallas County):  The following language shall be added to and incorporated into the treatment of the Class 7 claim of Dallas County in the Plan:

"Dallas County's Allowed Secured Claim for years 2005 and 2006 ad valorem property taxes and business  personal property taxes shall receive interest from the Petition Date through the Effective Date of the plan at the rate of 1% per month pursuant to 11 U.S.C. Sections 506(b) and 511. These tax claims will be paid in regular monthly installments over a sixty month period from the date of the order for relief. Payments will commence on the Effective Date and will be sent to the address listed on Dallas County's proof of claim. Dallas County shall retain all liens securing pre-petition and post-petition ad valorem property taxes and the priority of those liens shall remain unaffected by confirmation of the plan. In the event of a default under the plan, Dallas County shall send notice of such default to counsel for the debtor. Failure to cure such default within twenty (20) days of the date of such notice entitles Dallas County to proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. Dallas County is only required to give two notices of default. Upon a third event of default Dallas County

shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes is an event of default."

<u>Article IV, Effects of Confirmation, Section G, Injunction</u>: The following language shall be added to an incorporated into this section: "Notwithstanding the foregoing, American Business Lending, Inc., the assignee and owner of the Class Four and Class Five allowed secured claims described above shall be permitted to pursue all contract and state law remedies in the event of a plan default by the Reorganized Debtor so long as prior to pursuing said contract or state law remedies, American Business Lending, Inc. provides the Reorganized Debtor with notice of any plan default and said default remains uncured for fifteen (15) days following the mailing of said notice."

<u>Article IV, Effects of Confirmation, Section J, Release of Liens</u>: The following language shall be added to an incorporated into this section: "Allowed secured Claims retain their prepetition lien interests."

After due deliberation and consideration of all of the foregoing, this Court hereby makes the following findings of fact and conclusions of law pursuant to Rule 7052 and 9014 of the Federal Rules of Bankruptcy Procedure. All of the following findings of fact shall constitute findings of fact even if stated as conclusions of law, and all of the following conclusions of law shall constitute conclusions of law even if stated as a finding of fact.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. <u>Jurisdiction</u>. This Court has jurisdiction pursuant to 28 U.S.C. §§157(b) and 1334(e) over the Bankruptcy Case and over entry of this Order. Matters regarding confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. §157(b). Venue of these proceedings and the Bankruptcy Case in this District is appropriate pursuant to 28 U.S.C. §§1408 and 1409.

B. <u>Notice</u>. Timely, sufficient and adequate notice of the Plan and the Confirmation Hearing, together with the deadlines for voting on and filing objections to the Plan, has been given to all known holders of Claims and Equity Interests and other parties-in-interest in accordance with the rules and procedures established by the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and all other applicable laws, rules and regulations.

C. <u>Approval of Disclosure Statement under Small Debtor Provisions</u>.

The Disclosure Statement Order provided that the Court would approve the Disclosure Statement ("Disclosure Statement") as containing adequate information under the provision of §1125 of the Bankruptcy Code at the confirmation hearing absent a written objection timely filed prior to the Confirmation Hearing. No such objection was filed, either timely or not, and therefore the Disclosure Statement is hereby approved under §1125 as set forth under the provisions for small business cases under §1125(f)(3) concerning the provisional approval of a small business disclosure statement. Further, the Disclosure Statement sent with the solicitation package insured that information that could affect the votes of Creditors was timely disclosed, and such is approved.

D. <u>Solicitation</u>. The Solicitation by the Debtor of votes accepting or rejection the Plan was conducted in good faith and in compliance with the Order, §§1125

and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable laws, rules and regulations.

E. <u>Ballot Tabulation</u>. As evidenced by the Certification Pursuant to Local Bankruptcy Rule 3018.2 with Respect to Balloting on the Plan (the "Ballot Tabulation Certification"), and the testimony adduced at the Confirmation Hearing, the procedures by which Ballots on the Plan were distributed to holders of Claims and tabulated were fair and properly conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of this Court, and all other applicable laws, rules and regulations.

F. <u>Objections</u>. There have been no objections filed to the confirmation of the Plan.

G. <u>Section 1129(a)(1)</u>. As required by §1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code. Among other things:

☐ The classification of Claims and Partnership Interests under the Plan is reasonable, not discriminatory, and consistent with §1122(a) of the Bankruptcy Code.

☐ As required by and in compliance with sections 1123(a)(1), (a)(2) and (a)(3) of the Bankruptcy Code, the Plan (a) identifies the Classes of Claims and Equity Interests; (b) specifies the Classes of Claims and Partnership Interests that are not impaired under the Plan as well as those

that are impaired under the Plan; and (c) specifies the treatment of each
Class of Claims and Equity Interests under the Plan.

☐    As required by and in compliance with §1123(a)(4) of the Bankruptcy
Code, the Plan provides the same treatment for each Claim in a particular
Class.

☐    As required by and in compliance with §1123(a)(5) of the Bankruptcy
Code, the Plan provides adequate means for its execution and
implementation including, but not limited to designation of the
Reorganized Debtor as the entity to make such distributions and to
continue the existing business of the Debtor.

H.    <u>Section 1129(a)(2)</u>.    As required by §1129(a)(2) of the Bankruptcy
Code, the Debtor has complied with all of the applicable provisions of the Bankruptcy
Code, including all applicable provisions regarding disclosure and solicitation with
respect to the Plan.

I.    <u>Section 1129(a)(3)</u>.    As required by §1129(a)(3) of the Bankruptcy
Code, the Debtor has proposed the Plan in good faith and not by any means forbidden by
law.    The Debtor has proposed the Plan with the legitimate and honest purpose of
adjusting the Debtor's debts and maximizing the returns to parties-in-interest in the
Bankruptcy Case.

J.    <u>Section 1129(a)(4)</u>.    As required by §1129(a)(4) of the Bankruptcy
Code, all payments made or to be made by the Debtor for services or for costs and
expenses in connection with the Bankruptcy Case, or in connection with the Plan and

incident to the Bankruptcy Case, have been approved by this Court or are subject under the Plan to the approval by this Court as reasonable.

K.     Section 1129(a)(5).     As required by §1129(a)(5)(A)(i) of the Bankruptcy Code, the Debtor has disclosed the name and identity of and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor.

L.     Section 1129(a)(6).     No governmental regulatory commission has jurisdiction over the approval of the Debtor's rates and §1129(a)(6) of the Bankruptcy Code therefore does not apply to the Plan.

M.     Section 1129(a)(7).     As required by §1129(a)(7) of the Bankruptcy Code, with respect to each impaired Class of Claims, each holder of a Claim of such Class either has accepted the Plan or will receive or retain under the Plan an account of such Claim or Partnership Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code.

N.     Section 1129(a)(8) and Section 1129(b).     As indicated by the Ballot Tabulation Certification, and as established on the record at the Confirmation Hearing, the impaired Classes 5 and 8 have voted to accept the Plan and accordingly, the requirements of §1129(a)(8) of the Bankruptcy Code have been met with respect to each such Class.

O.     Section 1129(a)(9).     In satisfaction of §1129(a)(9) of the Bankruptcy Code, the Plan provides for the payment in full of Allowed Administrative Expense

Claims, Allowed Priority Claims, and Allowed Priority Tax Claims on or as soon as practicable after the later of the Effective Date of the Plan and the date on which any such Administrative Expense Claim, Allowed Priority Claim, and Allowed Priority Tax Claim becomes an Allowed Claim except to the extent that the holder of an Allowed Priority Tax Claim under §507(a)(8) or a secured claim which would otherwise meet the description of an Allowed Priority Tax Claim but for the secured status of that claim will receive regular installment payments in cash of a total value, as of the effective date of the Plan, equal to the allowed amount of such claim over a period ending not later than 5 years after the date of the order for relief.

P.     Section 1129(a)(10). As required by §1129(a)(10) of the Bankruptcy Code, at least one impaired Class of Claims has accepted the Plan as determined without including any acceptance of the Plan by any insider.

Q.     Section 1129(a)(11). The Plan is feasible and satisfies the requirements of §1129(a)(11) of the Bankruptcy Code. The Reorganized Debtor appears to have sufficient capital to meet its reasonable business needs and does not appear likely to need to be financially reorganized in the future based on the Debtor's financial projections which appear reasonable under the circumstance.

R.     Section 1129(a)(12). The requirements of §1129(a)(12) of the Bankruptcy Code are satisfied because the Debtor is current with respect to its payments of the United States Trustee fees imposed by 28 U.S.C. §1930, and because the Plan expressly provided for the payment of all such fees, if any, that arise in the future.

S. <u>Section 1129(a)(13)</u>. The requirements of §1129(a)(13) of the Bankruptcy Code are met in that all employee benefits existing prior to the petition date will continue for employees that remain with the Reorganized Debtor for the duration of the period the Debtor obligated itself to provide such benefits.

T. <u>Other Requirements</u>. The Plan satisfies the requirements of §1129(c) of the Bankruptcy Code because no other Plan has been confirmed in the Bankruptcy Case. The Plan satisfies the requirements of §1129(d) of the Bankruptcy Code because the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

U. The statements in the Amended Disclosure Statement concerning the liquidation analysis or possible distributions to Class 8 unsecured creditors were sufficiently descriptive of the contingent, hypothetical and estimated nature of any amounts that might be available for distribution to Class 8 creditors.

**NOW, THEREFORE, IT HEREBY IS ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Plan, in the form attached to this Order as Exhibit A, and any modifications to it as set forth in this Order, is hereby confirmed pursuant to §1129 of the Bankruptcy Code.

2. The Debtor is authorized to issue, execute, deliver, file and record any documents or Court papers or pleadings, and to any and all actions, that are necessary or desirable to implement, effectuate and consummate the transactions contemplated by the

Plan, whether or not specifically referred to therein and without further application to or order of this Court, in each case with like effect as if exercised and taken by action of the of the Debtor as may be necessary to cause the same to become effective under applicable law. This Order shall constitute all approvals and consents required, if any, by the laws rules or regulations of any State or any other Governmental Unit with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

3.     Pursuant to §1125(e) of the Bankruptcy Code, the Debtor and any other persons that solicited acceptance or rejections of the Plan and/or that participated in the offer, issuance, sale, or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

4.     The injunction provided for in the Plan hereby is approved and authorized and ordered as if fully set forth in this Order.

5.     The Debtor has not designated any agreements to be rejected as a result of confirmation. On and as of the Effective Date, any remaining Executory Contracts that exist between the Debtor and any Person and that have not previously been assumed or rejected by the Debtor shall be and hereby are rejected pursuant to §365 of the Bankruptcy Code.

6.     Except as otherwise provided herein, all requests for payment or any other means of preserving and obtaining payment of Administrative Expense Claims that have

not been paid, released, or otherwise settled, including all requests for payment of Professional Claims, other than Administrative Tax Claims, must be filed with this Court and served upon the Debtor, the United States Trustee, and all parties who have requested notice by the earlier of (a) thirty (30 after the entry of this order confirming the Plan; and (b) any applicable bar date established by this Court and noticed separately by the Reorganized Debtor. Requests for payment of Administrative Expense Claims (other than Administrative Tax Claims) that are not timely filed as set forth above will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtor, the Estates, or Reorganized Debtor. **Provided however, that Dallas County** is the holder of an allowed secured administrative expense claim for the year 2007 ad valorem property taxes. Dallas County shall receive payment of its administrative expense claim prior to delinquency pursuant to state law without filing an administrative expense claim and request for payment. In the event that Dallas County does not timely receive payment of year 2007 ad valorem property taxes, it will provide notice of non-payment to Reorganized Debtor with 20 days from the date of transmission of such notice to cure non-payment to be delivered to the taxpayer at 668 Beatty Drive, Grand Prairie, TX 75052; if such a default is not cured, Dallas County shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. Dallas County shall retain all liens securing year 2007 ad valorem property taxes and any penalties and interest that may accrue.

   7.  On or before ten (10) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims a Notice that informs such holders of (a) entry of the Confirmation Order; (b) the

occurrence of the Effective Date; (c) the deadline established for filing of Administrative Expense Claims as set forth in this Order; (d) provisions regarding objections to claims consistent with the Plan, and (e) such other matters as the Reorganized Debtor deems to be appropriate. Such Notice shall constitute due and sufficient notice of all of such matters in compliance with Bankruptcy Rule 2002(f).

8. Notwithstanding the entry of this Order or the occurrence of the Effective Date, this Court will retain jurisdiction of the Bankruptcy Case and all matters arising in , or related to, the Bankruptcy Case as provided for in the Plan and in this Order, and to the fullest extent permitted by law, including §§1127 and 1142 of the Bankruptcy Code.

9. The failure to reference or discuss any particular provision of the Plan in this Order shall not have any effect on the validity, binding effect and enforceability of such provision, and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

10. The provisions of the Plan and this Order shall be, and hereby now are and forever afterwards, will be binding on the Debtor, and all holders of Claims (whether or not impaired under the Plan and whether or not, if impaired, such entities accepted the Plan), any other party-in-interest, any other party making an appearance in this Bankruptcy Case, and any other person or entity making an appearance in the Bankruptcy Case, and any other person or entity affected thereby, as well as their respective heirs, predecessors, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians, and similar officers, or any Person claiming through or in the right of any such Persons or entities.

### # # # END OF ORDER # # #

Accepted and Agreed:                                Accepted and Agreed:


/s/ Brad Repass_____                    /s/ Laurie A. Spindler_____
Brad Repass, Attorney for American                 Laurie A. Spindler, Attorney for
Business Lending, Inc.                             Dallas County


Accepted and Agreed:


/s/ Judith A. Swift_____
Judith A. Swift, Attorney for Debtor

Judith A. Swift, P.C.          **EXHIBIT**
**"A"**
10501 North Central Expressway
Suite 301
Dallas, Texas  75231
Telephone:  (214) 696-6200
Facsimile:  (214) 692-0660
Judith A. Swift
State Bar No.:  19585300
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN  DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Rosael Rodriguez | § | |
| d/b/a Mama Rosa's Kids N Play | § | CASE NO.: 06-33637- HDH - 11 |
| | § | |
| DEBTOR | § | CHAPTER 11 |
| | § | |

**CHAPTER 11 PLAN OF REORGANIZATION OF  ROSAEL RODRIGUEZ
d/b/a MAMA ROSA'S KIDS N PLAY**

The Debtor as Debtor-in-Possession,   proposes the following Chapter 11 Plan of

Reorganization pursuant to the provisions of Section 1121 of the Bankruptcy Code.

## I.     INTRODUCTION

Rosael Rodriguez (Rodriguez)  is the debtor in this  Chapter 11 bankruptcy case. On September 1, 2006, Rodriguez commenced a bankruptcy case by filing a Chapter 13 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  On March 8, 2007 the case was converted to Chapter 11. This document is the Chapter 11 plan ("Plan") proposed by the Debtor. This is a reorganizing plan. In other words, the Debtor intends to fund payments under the Plan from future profits from the operation of the business, i.e. two child care centers in Grand Prairie, Texas.

## II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. General Overview

Pursuant to  section  1122 of the  Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B.  Administrative Claims

 The  Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment. As such, Administrative Expense Claims are excluded from classification in accordance with section 1123(a)(1) of the Bankruptcy Code. Administrative expense claims are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee incurred during the Chapter 11 Case are Administrative Expense Claims. These fees are set by statute and can be paid without court approval as they come due. Professional compensation and expenses are also administrative claims, but these can only be paid after court approval.

### Payment of Administrative Expense Claims

Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and  reimbursement of expenses not later than thirty (30) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.

Each holder of an Allowed Administrative Expense Claim shall receive the amount of such Allowed  Administrative Expense Claim, without interest, in cash, on or as soon as practicable after the later of (a) the Effective Date, or (b) the date that is ten (10) Business Days after such Claim becomes an Allowed Administrative Expense Claim.

At this time, the only known administrative claims are for Debtor's counsel, in an estimated amount of $20,000.00 and the 2007 property taxes, in the amount of $28,367.68 as set out the Administrative Proof of Claim filed by Dallas County.

Allowed attorneys fees will be paid upon court approval of a formal fee application to be filed by Debtor's counsel within 30 days following confirmation of the Plan.

The Dallas County Administrative Claim is based on the actual property taxes due for 2006. This number may change when the taxing authorities send out the actual tax bills in October. The Debtor will pay the 2007 property taxes as they come due, by January 31, 2008 or on the Effective Date of the Plan, whichever comes later.

**C.      Classified Claims and Interests paid through the Plan**

**Creation of Classes:** Pursuant to section 1122 of the Bankruptcy Code, Classes of Claims and Interest are designated below. For purposes of voting and all confirmation matters with respect to non-administrative Claims and Interests, this Plan classifies the Claims against and the Interests in the Debtor as follows:

1.      **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following represent all classes containing Debtor's secured pre-petition claims except secured tax claims, which are treated separately, and their treatment under this Plan:

Class 1:      Allowed secured claim of J.P. Morgan Chase Bank, N.A. in the amount of $94,124.94. This claim is secured by a first lien on the Debtor's homestead at 3206 Weirgate Court, Grand Prairie, Texas 75052, which the Debtor values at $122,300.00. The Debtor is current on all payments, and will continue to make monthly payments as due under the loan.

Class 2:      Allowed secured claim of Daimler Chrylser Financial Services Americas L.L.C. in the amount of $19,254.15. This claim is secured by a lien on the Debtor's 2005 Dodge Ram Caravan. The Debtor is current on all payments, and will continue to make monthly payments as due under the loan.

Class 3:      Allowed secured claim of the Roomstore in the amount of $914.13. This claim is secured by a purchase money lien on furniture in the Debtor's home. This claim will be paid without interest, in cash, on or as soon as practicable after the Effective Date.

Class 4:        Allowed secured claim of  Gateway National Bank, assigned to American Business Lending, Inc.  in the amount of $199,596.65. This claim is secured by a first lien on the property, fixtures and furniture at 401 Royal Valley Road, Grand Prairie, Texas,  which is the site of Mama Rosa's Kids N Play #2.     There is a prepetition arrearage of $192.38. This claim will be paid without interest, in cash, on or as soon as practicable after the Effective Date.

The Debtor is current on all postpetition payments, and will continue to make future postpetition
monthly payments as due under the loan.

Class 5:        Allowed secured claim of  Gateway National Bank, assigned to American Business Lending, Inc.  in the amount of $392,593.21. This claim is secured by a first lien on the property, fixtures and furniture at 668 Beatty, Grand Prairie, Texas,  which is the site of Mama Rosa's Kids N Play #1.    Gateway has filed a prepetition arrearage claim in the amount of  $12,549.93.

The Debtor disputes the arrearage.  This claim, as allowed,  will be paid in full at an interest rate of 10% in regular installment payments in cash within five years after the date of the order for relief.

The Debtor is current on all postpetition payments, and will continue to make future postpetition
monthly payments as due under the loan.

**2.      Secured and Priority Tax Claims of Governmental Units**

Priority tax claims are certain unsecured income, employment and other taxes described
by Code Section 507(a)(8).  Secured priority tax claims are claim secured by a tax lien which would also qualify as priority claims under section 508(a)(8).

Class 6:        Allowed secured claim of the Internal Revenue Service. The IRS has filed a secured claim  in the amount of  $322,966.05. Part of this claim is secured by a second lien on the Debtor's homestead and both child care properties, as well as on the Debtor's personal property.

Allowed priority claim of the Internal Revenue Service. The  IRS has filed a priority claim  in the amount of  $188,859.32.

The Debtor disputes a portion of the IRS secured claim as filed. If the Debtor prevails, a portion of the IRS secured claim will be come a general unsecured claim and a portion will become a priority claim.

These tax claims, as allowed, will be paid in regular monthly installments over a sixty month period from the date of the order for relief at an interest rate of 8 %.

Failure of the Debtor to meet the payment obligations set forth in the Plan shall constitute an event of default under the Plan. In addition, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien and the powers of levy, seizure, and sale under the Internal Revenue Code. The below stated provisions apply to the IRS:

(a) If the Debtor or its successor in interest fails to make any Plan payments, and deposits of any currently accruing employment of sales tax liability, fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest fails to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(b) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor or the successor in interest.

(c) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to sent two notices of default and upon the third event of default, the IRS may proceed to collect on all accounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.

(d) The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(e) All payments will be sent to Leo Carey/IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242.

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor in the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any

liability that may be due and owing by the responsible person of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the plan, and as set forth above.


        Class 7:      Allowed secured claim of Dallas County in the amount of $28,367.68, for unpaid property taxes for 2006. This claim is secured by a lien on the Debtor's real and personal property.  This tax claim will be paid in regular monthly installments over a sixty month period from the date of the order for relief  at an interest rate of 12%.


3.     **Class of General Unsecured Claims**


        General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).

        Class 8:      The Debtor has scheduled the following unsecured claims:

| | |
|---|---|
| Beneficial | $244.63 |
| Direct Merchants | $3961.78 |
| Resurgent Capital | $1220.72 |
| eCAST | $194.62 |
| eCAST | $1343.74 |
| Max Net Recovery | $149.25 |
| IRS | $145,507.92, subject to addition |

based on final allowed amount of the IRS secured claim.


 Allowed unsecured claims will be paid in regular monthly installments  over a sixty month period from the date of the order for relief.  The Debtor estimates that the total monthly distribution to unsecured claims will be approximately $3000, to be shared on a pro rata basis.


        Class 9:      Equity Interest Holders. The Debtor's business is operated as a sole proprietorship. Therefore, the Debtor is the sole member of this class.  The Debtor intends to retain her ownership and operation of the business in the Plan.

**Claims may be in more than one Class:**  An Allowed Claim is part of a particular Class only to the extent that the Allowed Claim qualifies within the definition of that Class and such Claim is part of a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

**Classes not impaired:** Classes 1, 2, 3, 4, 6, 7 and 9 are not impaired under this Plan.

**Impaired Classes:** Classes 5 and 8 are impaired under this Plan.

Page 21 of 22

**Impairment Controversies:** If a controversy arises as to whether any Class of Claims or Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class of Claims or of Interests under this Plan.

E. **Acceptance or Rejection of Plan**

**Classes and Claims entitled to vote:** Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. Unimpaired Classes are not entitled to vote and are presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

**Cramdown:** In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Proponent reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

F. **Means of Effectuating the Plan**

1. Funding for the Plan: The Plan will be funded by the operating income from ongoing business operations.

2. Post-Confirmation Management will consist of the Debtor and her daughter, Jeanette Cosme, who has acted as general manager for many years

3. The Reorganized Debtor shall be responsible for making all distributions provided for under the Plan.

## III. EXECUTORY CONTRACTS

A. **Executory Contracts and Unexpired Leases**

1. **Assumptions**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:

| | |
|---|---|
| ISI Commercial Refrigeration | 2 leases of refrigeration equip. at each location |
| Nevill Business Machines | Office Equipment |
| Xerox Capital | Office Equipment |

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor. The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above. If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

2.      **Rejections**

On the Effective Date, all executory contracts not assumed shall be deemed to be rejected, including any not listed here.    The Debtor knows of no executory contracts to be rejected.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS NOT LATER THAN THIRTY (30) DAYS AFTER THE EFFECTIVE DATE.**

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

## IV.  EFFECTS OF PLAN CONFIRMATION

A.    **Discharge**

This Plan provides that upon confirmation of the Plan, the Debtor shall be discharged of liability for payment of debts incurred before Confirmation to the extent specified in 11 U.S.C.§ 1141. However, any liability imposed by the Plan will not be discharged.

The provisions of this Plan shall be binding upon Debtor, and all Creditors regardless of whether such Claims are impaired or whether such parties accept this Plan, upon Confirmation thereof.

If Confirmation of this Plan does not occur, the Plan shall be deemed null and void. In such event, nothing contained in this Plan shall be deemed to constitute a waiver or release of any claims against the Debtor or its estate or any other persons, or to prejudice in any manner the rights of the Debtor or its estate or any person in any further proceeding involving the Debtor or its estate.

B.       **Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the Confirmation revests all of the property of the estate in the Debtor.

C.       **Modification of Plan**

The Debtor may alter, amend or  modify the Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law  at any time before Confirmation.
However, the Court may require a new disclosure statement or revoting on the Plan if Proponent
modifies the Plan before Confirmation.

The Debtor may also seek to modify the Plan at any time after Confirmation and prior to the substantial consummation of the Plan so long as the treatment of holders of Claims or Equity Interests under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan; provided, however, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

D.       **Revocation or Withdrawal of this Plan**

The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any Person in any further proceedings against the Debtor.

### E.      Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under
§ 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan. If the
Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property
that had been property of the Chapter 11 estate, and that has not been disbursed pursuant
to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed
upon the revested property only to the extent that relief from stay was not previously
granted by the Court during this case.

### E.      Post-Confirmation Quarterly Fees

Quarterly fees pursuant to 28 U.S.C. Section 1930 (a)(6) continue to be payable to the
Office of the United States trustee post-confirmation until such time as the case is
converted, dismissed, or closed pursuant to a final decree.

### F.      Satisfaction of Claims

The treatment of and consideration to be received by holders of Allowed Claims pursuant
to this Plan shall be in full satisfaction, settlement, discharge and release of such holders'
respective Claims against the Debtor and the Estate.

### G.      Injunction

Provided that the Effective Date occurs, the entry of the Confirmation Order shall, and
shall be deemed to, permanently enjoin all Persons that have held, currently hold or may
hold a Claim or other debt or liability against the Estate, or have held, currently hold or
may hold an interest in the Debtor, from taking any of the following actions on account
of such Claim or interest: (i) commencing, conducting or continuing in any manner,
directly or indirectly, any suit, action or other proceeding of any kind against the Debtor,
the Estate, or the Reorganized Debtor with respect to any property to be distributed under
the plan including funds or reserves held or maintained by any of them pursuant to this
Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner
or by any means, whether directly or indirectly, any judgment, award, decree, or order
against the Debtor, the Estate, or the Reorganized Debtor with respect to any property to
be distributed under the Plan, including funds or reserves held or maintained by any of
them pursuant to this Plan, (iii) creating, perfecting or enforcing in any manner directly or
indirectly, any lien, charge or encumbrance of any kind against the Debtor, the Estate, or
the Reorganized Debtor with respect to any property to be distributed under the Plan,
including funds or reserves held or maintained by any of them pursuant to this Plan; and
(iv) proceeding in any manner in any place whatsoever against the Debtor, the Estate, or
the Reorganized Debtor with respect to any property to be distributed under the Plan,
including funds or reserves held or maintained by any of them pursuant to this Plan in
any way that does not conform to, or comply, or is inconsistent with, the provisions of

this Plan; provided, however, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court.

H.      **No Liability for Solicitation or Participation**

Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer, issuance, sale, or purchase of securities.

I.      **Term of Injunctions and Stays**

Unless otherwise provided, all injunctions of stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code or otherwise and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

J.      **Release of Liens**

Except as otherwise provided in this Plan or the Confirmation Order, all Liens, security interests, deeds of trust, or mortgages against property of the Estates shall and shall be deemed to be released, terminated, and nullified.

V.      MISCELLANEOUS PROVISIONS

A.      **Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

B.      **Retention of Jurisdiction**

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Section, or if the Debtor or the reorganized debtor

elect to bring an action or proceeding in any other forum, then this Section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

C. **Procedures for Resolving Contested Claims**

Objections to Claims and interests, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the reorganized debtor or any party in interest up to and including sixty (60) days following the entry of the Confirmation Order. With respect to disputed Claims or interests, the Reorganized Debtor will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or interest, as listed either in the Debtor's schedules or the filed proof(s) of claim.

D. **Claims or Amended Claims Filed After The Confirmation Date**

Except as otherwise provided in the Plan, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Reorganized Debtor.

E. **Minimum Distribution**

Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor shall not be required to make distribution of less than $500 to any Claimant unless such distribution is the only distribution to such Claimant.

F. **Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are served electronically or sent first class by mail, postage prepaid, to the Debtor , addressed to:

Judith A. Swift, P.C.
10501 North Central Expressway
Suite 301
Dallas, Texas  75231

G. **Payment of Statutory Fees**

All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Code, shall be paid when due.

H.    **Retention of Actions and Defenses**

All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity, or otherwise, whether arising under the Bankruptcy Code or federal, state, or common law, which constitute property of the Estates within the meaning of section 541 of the Bankruptcy Code, as well as all claims, rights, defenses, offsets, recoupments, and causes of action arising under chapter 5 of the Bankruptcy Code (including without limitation the Avoidance Actions) with respect to the Debtor, shall be and hereby are preserved for the benefit of the holders of Allowed Claims. Except as otherwise set forth in specifically in this Plan, prosecution and settlement of such claims, rights, defenses, and causes of action shall be the sole responsibility of the Reorganized Debtor and the Reorganized Debtor shall pursue those claims, rights, defenses, and causes of action, as appropriate, in accordance with what is in the best interests, and for the benefit of, the beneficiaries of the Reorganized Debtor; provided, however, that nothing in this Plan is intended to or does confer upon the Reorganized Debtor standing to pursue claims or causes of action that do not constitute property of the Estate.

I.    **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

J.    **Plan Controls**

To the extent there is an inconsistency or ambiguity between any term and provision contained in the Disclosure Statement and the Plan and the terms and provisions of the Plan shall control.

K.    **Governing Law**

Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

L.    **Substantial Consummation of Plan**

The Plan shall be deemed to be substantially consummated when the Reorganized Debtor makes the Initial Distribution.

M.     **Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

N.     **Severability**

Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Interest, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and modify such provision to make it valid and enforceable to the maximum extent of practicable consistent with the original purpose of such provision. Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan shall remain in full force and effect.

O.     **Notices and Distributions**

On and after the Effective date, all notices, requests and distributions to a holder of a Claim or Interest shall be sent to the last known address of (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Expense Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtor. Any holder of a Claim or Interest may designate another address for the purposes of this Section by providing the Reorganized Debtor written notice of such address, which notice will be effective upon receipt by the Reorganized Debtor.

P.     **Unclaimed Property**

If any property distributed by the Reorganized Debtor remains unclaimed for a period of two (2) years after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Reorganized Debtor free and clear of any rights, claims or interests. At least once a year until the Bankruptcy Case are closed, the Reorganized Debtor shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of holders of all unclaimed distributions. The use of regular mail, postage prepaid, to the last known address of a holder of a Claim shall constitute delivery for purposes of this Section.

Q.     **Binding Effect**

The Plan shall be binding on and inure to the benefit of the holders of Claims (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns.

R.     **Withholding and Reporting**

In connection with this plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements. Notwithstanding anything herein to the contrary, in calculating and making the payments due to Allowed Claims hereunder, the Reorganized Debtor shall be authorized to deduct from such payments any necessary withholding amount.

S.     **Other Documents and Actions**

The Debtor and the Reorganized Debtor may execute such documents and take such other action as is reasonable, necessary, or appropriate to effectuate the transactions provided for in this Plan.

T. **Rules of Interpretation**

Unless otherwise specified, all Section, Article and Exhibit references in this Plan are to the respective Section in, Article of, or Exhibit to this Plan, as the same may be amended, waived or modified from time to time. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply. In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

/s/ Rosael Rodriguez
Rosael Rodriguez
Debtor-in-Possession

/s/ Judith A. Swift
Judith A. Swift
State Bar No.: 19585300
10501 North Central Expy
Suite 301
Dallas, Texas 75231
(214) 696-6200
(214) 692-0660

**ADDENDUM**

DEFINITIONS AND INTERPRETATIONS

<u>**Scope of Definitions.**</u> For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Section of the Plan. In all references herein to any parties persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.     <u>**Administrative Expense**</u> shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Code, and the reasonable fees and expenses incurred by the Proponent in connection with the proposal and confirmation of this Plan.

2.     <u>**Allowed**</u> when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtor, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order. Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.     <u>**Allowed Administrative Expense**</u> shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.     <u>**Allowed Unsecured Claim**</u> shall mean an Unsecured Claim that is or has become an Allowed Claim.

5. **Assumed Contracts** means the Executory Contracts that have been assumed pursuant to section 365 of the Bankruptcy Code prior to the date hereof or that are assumed as a result of the Plan.

6. **Avoidance Actions** means any and all actions which a trustee, debtor-in-possession or other appropriate party in interest may assert on behalf of the Debtor under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 542, 544, 545, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

7. **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Code.

8. **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Texas having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

9. **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

10. **Bar Date** means the date set by the Bankruptcy Court as the last day for filing of proofs of claim in the Bankruptcy Case.

11. **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in Texas are authorized by law to close.

12. **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Rosael Rodriguez is the Debtor.

13. **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. All claims as such term is defined in section 101(5) of the Bankruptcy Code.

14. **Claimant** means the holder of any Claim or Interest entitled to distributions with respect to such Claim or Interest.

15. **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

16.     **Code** shall mean Title 11 of the United States Code, otherwise known as the Bankruptcy Code.

17.     **Confirmation** shall mean the entry of an Order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

18.     **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan.

19.     **Confirmation Order** shall mean an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

20.     **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code. This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

21.     **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Code.

22.     **Debtor** shall mean Rosael Rodriguez.

23.     **Debtor in Possession** shall mean Rosael Rodriguez.

24.     **Disbursing Agent** shall mean any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

25.     **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 et seq. of the Bankruptcy Code.

26.     **Distribution Date** means the Effective Date and any subsequent date on which distributions of cash are to be made.

26.     **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

28.     **Estate** means the estate of the Debtor pursuant to section 541 of the Bankruptcy Code.

29.     **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

30.     **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

31.  **Executory Contract** means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

32.  **Final Decree** means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

33.  **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek review or rehearing of which having expired, has become final and is in full force and effect.

34.  **Government Unit** means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

35.  **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interests", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

36.  **Liens** means valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind against any property of any of the Estates.

37.  **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

38.  **Petition Date** shall mean the date at which this case was commenced by the filing of a voluntary petition in bankruptcy.

39.  **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

40.  **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3), (4), (5), (6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

41.  **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

42.  **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

43.  **Proceedings** shall mean the Chapter 11 Case of the Debtor.

44.     **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

45.     **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

46.     **Proponent** means Rosael Rodriguez, the Debtor in Possession.

47.     **Pro Rata Share** means, with respect to any distribution under this Plan, as of any particular Distribution Date, proportionate sharing calculated as the ratio of the amount of an Allowed Claim to the cumulative amount distributed to the total amount of all Allowed Claims and Disputed Claims eligible for such distribution.

48.     **Rejected Contracts** means the Executory Contracts that have been previously rejected by pursuant to section 365 of the Bankruptcy Code prior to the date hereof, or that are identified on the Scheduled of Rejected Contracts, if any, as such schedule may be amended or modified from time to time. Provided, however, that the Debtor's Limited Partnership Agreement that is canceled under the Plan shall not be deemed a contract that would be subject to any Rejection Claim.

49.     **Reorganized Debtor** means the Debtor after confirmation of the Plan.

50.     **Schedules** means the consolidated Schedules and Statement of Financial Affairs filed by the Debtor with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

51.     **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

52.     **Unsecured Claim** shall mean any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code. "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

53.     **<u>Other Definitions,</u>** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein", "hereof", "hereto, "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Moreover some terms defined herein are defined in the section in which they are used.